IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**SIERRA CLUB; WEST VIRGINIA**
**HIGHLANDS CONSERVANCY, INC.; and**
**WEST VIRGINIA RIVERS COALITION, INC.;**

      **Plaintiffs,**

v.                                           **CIVIL ACTION NO. 3:24-cv-00130**

**UNITED STATES ENVIRONMENTAL**
**PROTECTION AGENCY; MICHAEL S.**
**REGAN, Administrator, United States**
**Environmental Protection Agency; and**
**ADAM ORTIZ, Regional Administrator,**
**United States Environmental Protection**
**Agency, Region III,**

      **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION'S MOTION TO INTERVENE

Immediately after this lawsuit was filed, the United States Environmental Protection Agency ("EPA") published a notice that it intends to enter into a proposed consent decree with the Plaintiffs, which purports to settle the case. *See* 89 Fed. Reg. 22140-02, 2024 WL 1329093 (Mar. 29, 2024). That consent decree, which Plaintiffs and the EPA negotiated without notifying or involving the West Virginia Department of Environmental Protection ("WVDEP"), would circumvent the vital interests and role of the agency, which is empowered by Congress to prioritize and develop this State's Total Maximum Daily Load ("TMDL") program under the Clean Water Act ("CWA"). Because the EPA does not intend to mount a defense in this case, and in order to protect the authority given to it by state and federal law, the WVDEP seeks to intervene in this litigation pursuant to Rule 24 of the Federal Rules of Civil Procedure.

**Background**

At issue in this lawsuit is the EPA's alleged failure to perform nondiscretionary duties under 33 U.S.C. § 1313(d)(2) to establish TMDLs for ionic toxicity in the Lower Guyandotte River Watershed. ECF No. 1, at 1. Plaintiffs contend that "[t]hose duties were triggered by (1) the failure by the [WVDEP] to adhere to certain agreed deadlines for ionic toxicity TMDLs for certain waters in West Virginia's Lower Guyandotte River Watershed in a June 13, 2017 memorandum of agreement between EPA and WVDEP; (2) WVDEP's failure to submit ionic toxicity TMDLs to EPA for certain waters in the Lower Guyandotte River Watershed when WVDEP submitted to EPA other TMDLs for other pollutants causing water quality impairments in that watershed; and (3) WVDEP's failure to submit to EPA pursuant to 33 U.S.C. § 1313(d)(2) any ionic toxicity TMDLs for the Lower Guyandotte River Watershed." *See id*. at 2.

Plaintiffs seek an order requiring the EPA "to develop, as soon as possible, ionic toxicity TMDLs" for the identified streams and to "disapprove West Virginia's actual and/or constructive submission of 'no TMDLs.'" *See id*. at 13. In the parallel proposed consent decree—drafted without any prior notice to the WVDEP—the existing parties to this litigation have apparently agreed that the EPA will develop ionic toxicity TMDLs for public review and comment by October 31, 2024, and will establish ionic toxicity TMDLs by early 2025. *See* Proposed Consent Decree, available at https://downloads.regulations.gov/EPA-HQ-OGC-2024-0145-0002/content.pdf (Last visited April 19, 2024).

As the primary regulator of water quality in the State of West Virginia, the WVDEP is flummoxed as to why it has been kept in the dark regarding a proposed settlement which must have been months in the making. The WVDEP is even more astounded that the EPA has apparently decided – in contrast to the prior litigation and without any advance notice to the

2

WVDEP – not to mount any kind of defense to the allegations leveled in the Plaintiffs' Complaint.

A review of the Complaint quickly demonstrates the WVDEP's substantial interest in the outcome of this case. Plaintiffs accuse the WVDEP of breaching a Memorandum of Agreement ("MOA") pursuant to which WVDEP had agreed to develop and implement certain TMDLs. The parties' secret negotiations, the almost immediate announcement of a proposed consent decree, and the intentional exclusion of the WVDEP from this case clearly establish that the disposition of this matter will impair the WVDEP's ability to protect its interests, and that the agency's interest cannot be adequately represented by the existing parties. The potential imposition of ionic toxicity waste load allocations is highly likely to have statewide ramifications which should not be rushed through a secretly negotiated consent decree with arbitrary deadlines, but should be vetted by the WVDEP with input from state constituents in the ordinary course, as contemplated by the CWA. Because the Plaintiffs and the Defendants are seeking relief from this Court which would strip the WVDEP of its congressionally approved role in creating and implementing TMDLs for the State of West Virginia, the agency seeks to intervene and defend this action.

**Legal Standard**

"[L]iberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (citing *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Parties may intervene either as a matter of right, or with permission of the Court. Rule 24(a)(2) of the Federal Rules of Civil Procedure provides for intervention of right, upon timely motion when the applicant:

claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parities adequately represent that interest.

Federal Rule of Civil Procedure 24(b)(1)(B) provides for permissive intervention when an applicant's claim or defense and the main action have a question of law or fact in common, provided that the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Additionally, Federal Rule of Civil Procedure 24(b)(2) provides for permissive intervention by a state agency, if a claim or defense is based upon "a statute or executive order administered by the … agency" or any "regulation, order, requirement, or agreement issued or made under the statute or executive order." Under any of these standards, the WVDEP meets the criteria to intervene.

## Discussion

The WVDEP satisfies the criteria to intervene as a matter of right, pursuant to Rule 24(a)(2). This intervention motion is timely. WVDEP's interest in the case is on par with, if not greater than, the interests of the named defendants. Adjudication of this case without the WVDEP will absolutely prevent the WVDEP from prioritizing and implementing the TMDL program in the ordinary course as provided under the CWA. And the existing parties – who negotiated their proposed consent decree without even notifying the WVDEP – are plainly inadequate to litigate the merits of the claims. Indeed, the existing parties intend to ask this Court to enter a judgment which assumes that the WVDEP has breached its prior MOA and been derelict in operating this State's TMDL program. Mandatory intervention is clearly proper. However, even if mandatory intervention were somehow not appropriate, permissive intervention would be clearly appropriate under Rule 24(b).

A.      **The WVDEP easily satisfies the criteria for intervention under Rule 24(a)(2).**

Under Rule 24(a)(2), a party is entitled to intervene as a matter of right if a timely application demonstrates that:

> 1. [It has a]n interest relating to the property or transaction involved in the action;
>
> 2. Disposition of the action may impair the applicant's ability to protect its interest as a practical matter; and
>
> 3. Its interest is not adequately represented by present parties.

*Local 1829 of United Mine Workers of America v. Island Creek Coal Co*., 157 F.R.D. 380, 383 (N.D. W.Va. 1994); *Felman*, 2009 WL 5064058 at *2. The WVDEP satisfies each of these requirements.

1. **This Motion is timely.**

Timeliness is determined by considering "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould v. Alleco, Inc*., 883 F.2d 281, 286 (4th Cir. 1989); *Alt v. USEPA*, 758 F.3d 588, 591 (4th Cir. 2014). This case is in its earliest stages: no action has been taken in this matter other than the filing of the Complaint. There is no scheduling order in this case, discovery has not commenced, and the current answer deadline is June 17. Intervention will not cause any delay. Prior to filing this motion, the WVDEP conferred with the Plaintiffs, who offered to consent to this motion but only if the WVDEP would agree to preemptively limit the scope of its intervention. In other words, the Plaintiffs are aware that this motion would be filed, and will suffer no prejudice from the WVDEP's intervention. *See, e.g., Mountaintop Condo Ass'n v. Dave Stabbert Master Builder, Inc*., 72 F.3d 361, 370 (3rd Cir. 1995) (finding motion to intervene timely even after some written discovery and settlement negotiations had occurred). Thus, this motion is timely.

2.  **The WVDEP's interest in this litigation is on par with, if not greater than, the interest of the EPA.**

The WVDEP has a deep-rooted interest in the outcome of this litigation.[1] The WVDEP is a governmental agency with a mission to preserve, protect, and enhance the state's watersheds for the benefit and safety of all its citizens.[2] For those waterbodies designated as impaired pursuant to Section 303(d) of the CWA, the WVDEP is tasked with establishing a TMDL of any pollutant. *See* 33 U.S.C. § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1)(ii). After the state calculates a TMDL, the TMDL is subject to public review. *See* 40 C.F.R. § 130.7(c)(1)(ii). Following public review, the state must submit its TMDL to the EPA for review, which must either approve or disapprove the submission within thirty days. *See* 33 U.S.C. § 1313(d)(2).

By excluding the WVDEP from this lawsuit, and in light of the EPA's apparent decision not to mount any defense, the parties are effectively asking this Court to strip the agency of its statutory right to establish priorities for the TMDL program and to develop TMDLs for pollutants which cause or contribute to ionic toxicity. Worse yet, for reasons completely unknown to the WVDEP, the existing parties appear to have spent many months negotiating their proposed consent decree while keeping the WVDEP in the dark.

The United States District Courts for the Northern *and* Southern Districts of West Virginia have both previously recognized the WVDEP's right to intervene in regulatory challenges like this one. *See, e.g.*, *United States v. AL Sols., Inc.,* No. 5:13CV169, 2014 WL 12987174, at *1 (N.D.W. Va. Jan. 10, 2014) (release of hazardous waste); *Shenandoah*

---

[1] In *Nuesse v. Camp, 385 F.2d 694* (D.C. Cir. 1967), a leading case establishing the parameters of Rule 24 shortly after its amendment in 1966, the U.S. Court of Appeals for the D.C. Circuit explained that "the 'interest' test [of Rule 24(a)] is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *See also Natural Resources Defense Council v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977).
[2] *See* West Virginia Department of Environmental Protection website: https://dep.wv.gov/WWE/Pages/default.aspx.

*Riverkeeper v. Ox Paperboard, LLC*, No. 3:11-CV-17, 2011 WL 1870233, at *1 (N.D.W. Va. May 16, 2011) (citizen suit under § 505 of the Clean Water Act); *Ohio River Valley Env't Coal., Inc. v. Salazar*, No. CIV.A. 3:09-0149, 2009 WL 1734420, at *1 (S.D.W. Va. June 18, 2009) (amendments to West Virginia's regulatory program of surface mining). This Court previously recognized that, because of its specialized role, the WVDEP "arguably has a higher interest" than federal regulators which "could motivate the WVDEP to mount a more vigorous defense than" the federal agencies who oversee these programs on a nationwide basis. *Salazar*, 2009 WL 1734420, at *1. Because this litigation strikes directly at the powers and responsibility of the WVDEP, and because its outcome will have far-reaching and lasting consequences for the agency's ability to prioritize, develop, and implement TMDLs in this state, its interest is in this litigation is immediate and substantial, supporting intervention as of right. *See Oregon Env't Council v. Oregon Dep't of Env't Quality*, 775 F. Supp. 353, 358 (D. Or. 1991) ("the governmental bodies charged with compliance" are proper parties).

> 3. **Disposition of this action will impair the WVDEP's ability to protect its interests.**

The disposition of this action will significantly harm the WVDEP's ability to protect its interests. As identified above, the CWA and West Virginia law vest the WVDEP with primary authority to prioritize, develop, and implement TMDLs for watersheds that are not attaining water quality standards. *See* 33 U.S.C.§ 1313(d). Unlike the prior litigation, the EPA in this case has decided not to defend against the Complaint, which alleges substantial misconduct on the part of the WVDEP. The EPA is therefore expressly declining to protect the agency's interest. In the absence of intervention there will be no litigation on the merits, and the WVDEP's interests in developing and implementing its TMDL program will not be protected. Because the Plaintiffs are seeking an order directing the EPA to assume responsibility for certain TMDLS based upon

7

the legal theory that the WVDEP has been derelict in operating that program, the WVDEP's intervention would be proper even if the proposed consent decree is ultimately rejected. Without intervention, the WVDEP would be left with little or no recourse to protect its interests. Intervention by the agency, and an ability to defend this case, is vital to the interests of the WVDEP and to the state of West Virginia.

4. **WVDEP's interest is not adequately represented by the existing parties.**

It is abundantly clear that the existing parties cannot adequately represent the WVDEP's interests. The EPA has not only declined to defend the case, but it has done so without any prior notice to the WVDEP. On its face, the parties' course of dealing easily surpasses the low bar required to demonstrate that the interests of the WVDEP cannot be adequately represented without intervention.

The burden of showing inadequate representation in a motion to intervene is not onerous. The proposed intervenor need only show that representation of its interest "may" be inadequate, "not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986*); see also WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C. 2010) ("Significantly, the putative intervenor's burden here is de minimis, and extends only to showing that there is a possibility that its interests may not be adequately represented absent intervention."). This de minimis standard prevails even in cases where there would be some overlap in interests and representation. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (allowing intervention where party took intervenor's interests "into account," holding it was not tantamount to "giving them the kind of primacy that the [intervenor] would give them.").

None of the existing parties will adequately represent the interests of the WVDEP. As identified above, the WVDEP has a specific interest in preserving its role as the regulatory agency with primary authority for prioritizing, developing, and implementing the TMDL program in the State of West Virginia. Unlike the prior litigation, the EPA is no longer seeking "to have this Court affirm the EPA's decision." ECF No. 32, at *32, *OVEC et al. v. McCarthy et al.*, No. 3:15-cv-00271 (S.D.W. Va. Dec. 14, 2015). By contrast, the WVDEP will aggressively defend this case, and does not share the same ultimate objective as the EPA. Indeed, if their interests were overlapping, the Plaintiffs and the EPA would have included the WVDEP in their pre-suit settlement negotiations and would not have spent months secretly negotiating their proposed consent decree. Where the EPA has secretly negotiated its own proposed consent decree and has no interest in defending the WVDEP's authority to remain in control of its TMDL program, intervention by the WVDEP is the only way in which this case can be fairly adjudicated. The WVDEP must be permitted to intervene as a matter of right.

**B.     Alternatively, WVDEP should be permitted to intervene pursuant to Rule 24(b).**

Even if the WVDEP were not entitled to intervention as of right, permissive intervention would be appropriate for multiple reasons under Rule 24. First, under Federal Rule of Civil Procedure 24(b)(1)(B), intervention may be permitted if (1) the motion is timely; (2) it reflects a claim or defense with a question of law or fact common with the main action; and (3) it will not prejudice the rights of the original parties or cause undue delay. *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991). As with intervention of right, the requirements for permissive intervention should be liberally construed. 7A Wright & Miller, Federal Practice and Procedure, § 1904.

As demonstrated above, WVDEP's motion is timely and at this early stage of litigation, it will not prejudice the rights of the present parties or cause undue delay. The WVDEP also

9

clearly has a significant interest in the subject matter of this action, and WVDEP has claims and/or defenses that have questions of law and fact in common with the main action.

This matter also represents precisely the type of intervention contemplated by Federal Rule of Civil Procedure 24(b)(2). WVDEP is a state agency responsible for administering and implementing TMDLs pursuant to the CWA and its implementing regulations. The Complaint's claims (and by extension the defenses) are heavily reliant upon regulations, statutory requirements, and agreements, directly involving WVDEP. The inclusion of this type of permissive intervention was specifically to ensure that governmental agencies were not unnecessarily excluded from cases like this one due to "exclusionary constructions of the rule." Fed.R.Civ.P. 24(b) Advisory Committee Note; *see also International Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 346 (1st Cir. 1989) (finding that Rule 24(b) was amended to "break down barriers to government intervention")(internal quotations omitted); *Nuesse v. Camp.* 385 F.2d 694, 705 (D.C. Cir. 1967) ("the amendment in effect expands the concept of 'claim or defense' insofar as intervention by a governmental officer or agency is concerned")(internal citations omitted). Here, governmental intervention under this rule is unquestionably appropriate.

Because WVDEP meets the elements necessary for permissive intervention, and the intervention would not unduly delay or prejudice the adjudication of the original parties' rights, the Court should allow such intervention even if it concludes that intervention as of right is not warranted.

## **CONCLUSION**

For the foregoing reasons, WVDEP respectfully requests that this Court grant its Motion to Intervene.

**Respectfully submitted,**

**The West Virginia Department of Environmental Protection,**

**By Counsel,**

/s/ Isaac R. Forman
Michael B. Hissam (WVSB # 11526)
Isaac R. Forman (WVSB # 11668)
Skyler A. Matthews (WVSB # 13532)
Hissam Forman Donovan Ritchie PLLC
P.O. Box 3983
Charleston, WV 25339
(681) 265-3802
(304) 982-8056 *facsimile*
mhissam@hfdrlaw.com
iforman@hfdrlaw.com
smatthews@hfdrlaw.com