IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

SIERRA CLUB; WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.; and
WEST VIRGINIA RIVERS COALITION, INC.;

           **Plaintiffs,**

           v.                                     CIVIL ACTION NO. 3:24-cv-00130

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States
Environmental Protection Agency; and
ADAM ORTIZ, Regional Administrator,
United States Environmental Protection
Agency, Region III,

           **Defendants.**

**PLAINTIFFS' RESPONSE TO THE WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION'S MOTION TO INTERVENE**

**INTRODUCTION**

"West Virginia has long resisted the requirements of the Clean Water Act." *Ohio Valley Envtl. Coalition, Inc. v. Pruitt*, 893 F.3d 225, 227 (4th Cir. 2018). That was the conclusion of the Fourth Circuit the last time it reviewed West Virginia's compliance with the Clean Water Act's requirements for the development of Total Maximum Daily Loads ("TMDLs").[1] The Fourth

---

[1] That conclusion was based in part on the fact that, in 1995, it took federal litigation and ultimately a federal consent decree and EPA-promulgated TMDLs to jumpstart West Virginia's efforts to comply with Section 303(d) of the Clean Water Act in the first instance. *Ohio Valley Envtl. Coalition*, 893 F.3d at 227–28. Tellingly, West Virginia was not an intervenor in the 1995 litigation. Consent Decree, *Ohio Valley Envtl. Coalition, Inc. v. Browner*, Civ. Nos. 2:95-0529 & 2:96-0091, CM/ECF #89 (S.D. W. Va. July 9, 1997). That prior Consent Decree—like the proposed consent decree that would resolve this action—made EPA's obligation to develop its own TMDLs contingent on West Virginia's continuing failure to develop EPA-approved TMDLs. *Compare id.*, ¶¶14, 17–19, *with* Proposed Consent Decree, ¶1 (available at https://downloads.regulations.gov/EPA-HQ-OGC-2024-0145-0002/content.pdf). Plaintiffs note

Circuit further warned that "continued intransigency" by the West Virginia Department of Environmental Protection ("WVDEP") with regard to ionic toxicity TMDLs could have legal consequences. *Id.* at 231.

WVDEP ignored that clear warning. Despite expressly acknowledging in 2017 that "there is no impediment under current West Virginia law that would preclude" it from complying with a schedule for the development of ionic toxicity TMDLs embodied in a Memorandum of Agreement ("MOA") with the Environmental Protection Agency ("EPA"),[2] WVDEP failed to comply with the initial deadlines prescribed in that MOA.[3]

WVDEP has now had nearly seven years to develop the TMDLs it committed to develop in the 2017 MOA. And nearly six years have passed since the Fourth Circuit warned WVDEP about the implications of continued intransigence. Yet the agency now comes to this Court proclaiming surprise to learn that its inaction has finally had consequences.[4]

---

that the terms of the proposed consent decree for this action remain subject to review of public comments.

[2] Memorandum of Agreement Between the West Virginia Department of Environmental Protection and the United States Environmental Protection Agency Regarding Submission of Total Maximum Daily Loads for Biologically Impaired Waters Pursuant to Section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d) at 2 (June 13, 2017), *Ohio Valley Envtl. Coalition v. Pruitt*, Civ. No. 3:15-cv-271, CM/ECF #107-2 (S.D. W. Va. June 13, 2017).

[3] Of course, the schedule in the MOA was a lynchpin of the Fourth Circuit's 2018 determination that WVDEP's inactions did not yet rise to the level of constructive submission. *Pruitt*, 893 F.3d at 231. In reaching that conclusion, the Fourth Circuit specifically credited EPA's assurances that it would hold WVDEP to that schedule. *Id.*

[4] No fewer than seven times WVDEP insinuates malfeasance on the part of the parties to this action for keeping the agency "in the dark" and engaging in "secret negotiations." CM/ECF #8 at 2–3. WVDEP has cited no statute, rule, or case that would require either Plaintiffs or EPA to inform it about the settlement negotiations that led to the proposed consent decree—let alone invite the agency to participate. As one federal district court has observed, "Parties are free to engage in settlement negotiations as they see fit, which would include the decision to exclude certain parties from the negotiations if they so choose." *United States v. Lexington-Fayette Urb. County Gov't*, Civ. No. 06-386 KSF, 2007 WL 2020246, at *3 (E.D. Ky. July 6, 2007). And, as

As WVDEP observes in its Memorandum in Support of its Motion to Intervene, the Plaintiffs and Defendants in this action have negotiated a consent decree that would, if proposed to and adopted by this Court, resolve this action. Under the terms of the proposed consent decree, EPA would propose by October 2024, and finalize by January 15, 2025, ionic toxicity TMDLs for certain streams in the Lower Guyandotte River Watershed. Proposed Consent Decree, ¶1 (available at https://downloads.regulations.gov/EPA-HQ-OGC-2024-0145-0002/content.pdf). Six of those eleven streams have been in need of TMDLs since 2002—more than two decades.[5]

EPA solicited comments on the proposed consent decree via notice in the Federal Register on March 29, 2024. 89 Fed. Reg. 22,140 (Mar. 29, 2024). The public comment period is schedule to close on May 31, 2024. 89 Fed. Reg. 35,090 (May 1, 2024). Plaintiffs anticipate that, following EPA's review of the public comments, the Parties will move this Court to enter a Consent Decree that resolves this action in its entirety.

Thus, WVDEP's proverbial chickens have come home to roost. By squandering every opportunity that it has had to develop ionic toxicity TMDLs, WVDEP's own actions have led to a situation where, as Congress intended, EPA will serve as a "backstop" in the face of State intransigency with respect to TMDLs. *See Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 792 F.3d 281, 289 (3d Cir. 2015) (recognizing the "'backstop authority' vested in EPA" by the Clean Water Act with respect to TMDLs).

---

one federal circuit court bluntly put it, "EPA is at liberty to negotiate and settle with whomever it chooses." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 93 (1st Cir. 1990).

[5] Those five streams are the Mud River, Sugartree Branch, Stanley Fork, Ballard Fork, and Ed Stone Branch. WVDEP, 2002 SECTION 303(D) LIST at 16–17 (2002) (available at https://dep.wv.gov/WWE/watershed/IR/Documents/IR_1996-2002_Documents/WV2002303dDocument2017.pdf).

But rather than accept the very predictable consequences of its inaction, WVDEP now requests to intervene in this action not just to object to the proposed consent decree, but instead to engage in "litigation on the merits" and "aggressively defend this case." CM/ECF #8 at 7, 9. For the following reasons, Plaintiffs respectfully request that, if the Court allows WVDEP to intervene, the Court limit the scope of WVDEP's participation in the case to the submission of objections to any proposed consent decree submitted to the Court.

### ARGUMENT

WVDEP contends that it can satisfy the requirements for either intervention as of right under FRCP 24(a), or permissive intervention under FRCP 24(b). CM/ECF #8 at 4. Plaintiffs take no position on whether WVDEP has satisfied the requirements for either form of intervention.[6] But, if the Court allows WVDEP to intervene in this action, Plaintiffs respectfully request that it limit the scope of WVDEP's participation in the case to the submission of objections to the anticipated proposed consent decree.

Both intervention as of right and permissive intervention are subject to the imposition of conditions or limitations by a district court. The Advisory Committee Note to the 1966 amendments to Federal Rule of Civil Procedure 24 states that, "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." *See also Ross v. Bernhard*,

---

[6] Although Plaintiffs are not taking a position on WVDEP's assertions of interests or possible impairment of those interests for purposes of this motion to intervene, Plaintiffs expressly reserve the right to challenge whether WVDEP has standing to continue this case in the absence of an original party, should the procedural posture warrant. *See Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998) (recognizing that an intervenor cannot continue a case "in the absence of the party … on whose side intervention was permitted" unless the intervenor establishes Article III standing).

396 U.S. 531, 542 n.15 (1970) (explaining that "the right to intervene may in some cases be limited"); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) (explaining that "restrictions on participation may also be placed on an intervenor of right"). Although the Fourth Circuit once left open the question whether conditions on intervention as of right are proper, *Columbus-America Discovery Group v. Atlantic Mutual Insurance Co.*, 974 F.2d 450, 470 (4th Cir. 1992), it has since that time affirmed a district court's limitations on the scope of intervention as of right, *American Whitewater v. Tidwell*, 770 F.3d 1108, 1121–22 (4th Cir. 2014). And in permissive intervention, "a federal district court is able to impose almost any condition." *Columbus-Am. Discovery Grp.*, 974 F.2d at 470.

Whether allowed intervention as of right or permissive intervention, WVDEP cannot be permitted to fundamentally alter this proceeding. "[A]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944).

WVDEP arrives to this present controversy near its resolution. If, as all anticipate, a proposed consent decree is lodged with the Court, the sole question presented for judicial resolution will be whether to enter the proposed consent decree. It is well settled that an intervenor "cannot preclude other parties from settling their own disputes and thereby withdrawing from the litigation." *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 528–29 (1986). A district court's assessment of a proposed settlement "does not require the court to conduct a trial or a rehearsal of the trial." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999) (internal quotation marks omitted). "[N]or

need it reach any dispositive conclusions on the admittedly unsettled legal issues in the case." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975).

Nonetheless, WVDEP's intervention motion suggests that the agency wants to turn this relatively simple proceeding into a drawn-out affair. WVDEP asserts that it intends to engage in "litigation on the merits" and "aggressively defend this case." CM/ECF #8 at 7, 9. WVDEP states that among its intentions are "to assert the defenses set forth in the Answer" attached to its motion. CM/ECF #7 at 1. The answer presents numerous affirmative defenses, ranging from an assertion that the Complaint should be dismissed under Rule 12(b)(6), to "any affirmative defenses, which *discovery proceedings* may hereinafter reveal to be appropriate." CM/ECF #9 at 7 (emphasis added).

WVDEP's apparent intention to engage in dispositive motions practice and discovery proceedings entirely disregards where this action stands—on the cusp of possible settlement—and would impermissibly "enlarge th[e] issues or compel an alteration of the nature of the proceeding." *Vinson*, 321 U.S. at 498. Because not even a "rehearsal of trial" is required, *North Carolina*, 180 F.3d at 581, and because the Court, in deciding whether to enter a consent decree, need not "reach any dispositive conclusions on the admittedly unsettled legal issues in the case," *Flinn*, 528 F.2d at 1172–73, WVDEP's intervention motion threatens to bloat this action beyond its current scope, presumably in service of the agency's clear goal to continue to delay the development of ionic toxicity TMDLs. But such broad intervention would defeat the purposes of the anticipated consent decree, which "is primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating." *Loc. No. 93*, 478 U.S. at 528.

To avoid that result, this Court should limit the scope of any intervention by WVDEP to presenting objections to the entry of the anticipated proposed consent decree. Such a limitation

would still allow WVDEP to be heard on whether the proposed consent decree "is fair, adequate, and reasonable and is not illegal, a product of collusion, or against the public interest." *North Carolina*, 180 F.3d at 581.[7] That opportunity is sufficient to prevent restrictions on WVDEP's participation from being deemed "fundamentally unfair," *American Whitewater*, 770 F.3d at 1121–22, because, under *Local No. 93*, that is all an intervenor is entitled to with regard to a consent decree, 478 U.S. at 579. *See also United States v. Metro St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040, 1044 (8th Cir. 1992) ("Once the intervenors had an opportunity to file objections to the proposed consent decree, there is little else that they could have done." (cleaned up)). But the requested limitation would ensure that the case proceeds efficiently, which in turn would maximize the chances that the Defendants can adhere to the deadlines in the proposed consent decree.

"District courts have inherent power to manage their dockets with an eye toward speedy and efficient resolutions." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022) (citing *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016)); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962) (recognizing "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (recognizing "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *United States v. Colon*, 64 F.4th 589, 596 n.7 (4th Cir. 2023) (same); *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019), *as amended* (June 10, 2019) (same). That inherent authority, paired with the court's authority to condition and limit

---

[7] Plaintiffs note that there is a presumption that consent decrees are not collusive, absent evidence to the contrary. *Muhammad v. Nat'l City Mortg., Inc.*, Civ. No. 2:07-cv-0423, 2008 WL 5377783, at *4 (S.D. W. Va. Dec. 19, 2008).

7

intervention as of right and permissive intervention,[8] enables this Court to restrict WVDEP's participation in this action to ensure that the agency does not weaponize its intervention in order to further delay the development of ionic toxicity TMDLs for the streams at issue in the Lower Guyandotte River watershed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, if the Court allows WVDEP to intervene in this action, it limit the scope of such intervention to the submission of objections to the anticipated proposed consent decree.

DATED: May 6, 2024                    Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (WVBN 10223)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 646-1182
Email: dteaney@appalmad.org

*Counsel for Plaintiffs*

---

[8] FRCP 24, Advisory Committee Note (1966); *Am. Whitewater*, 770 F.3d at 1121–22; *Columbus-Am. Discovery Grp.*, 974 F.2d at 470.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# HUNTINGTON DIVISION

**SIERRA CLUB; WEST VIRGINIA**
**HIGHLANDS CONSERVANCY, INC.; and**
**WEST VIRGINIA RIVERS COALITION, INC.;**

        **Plaintiffs,**

        v.                              CIVIL ACTION NO. 3:24-cv-00130

**UNITED STATES ENVIRONMENTAL**
**PROTECTION AGENCY; MICHAEL S.**
**REGAN**, Administrator, United States
Environmental Protection Agency; and
**ADAM ORTIZ**, Regional Administrator,
United States Environmental Protection
Agency, Region III,

        **Defendants.**

## CERTIFICATE OF SERVICE

I, Derek O. Teaney, do hereby certify that, on May 6, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system, which will notify, among others, the following participants:

| | |
|---|---|
| David J. Kaplan<br>Environmental Defense Section<br>Environment & Natural Resources Division<br>U.S. Department of Justice<br>PO Box 7611<br>Washington, DC 20044<br>(202) 514-0997<br>david.kaplan@usdoj.gov<br>*Counsel for Defendants* | Isaac R. Forman<br>Michael B. Hissam<br>Skyler A. Matthews<br>Hissam Forman Donovan Ritchie PLLC<br>PO Box 3983<br>Charleston, WV 25339<br>(681) 265-3802<br>(304) 982-8056 *facsimile*<br>iforman@hfdrlaw.com<br>mhissam@hfdrlaw.com<br>smatthews@hfdrlaw.com<br>*Counsel for Movant-Intervenor*<br>*W. Va. Dep't of Envtl. Protection* |

                                                                       **/s/ Derek O. Teaney**
                                                                       Derek O. Teaney